[No. B124959. Second Dist., Div. Six. Apr. 3, 2000.]

In re ERIC O. LOCKS on Habeas Corpus.

## COUNSEL

Jonathan B. Steiner and Richard B. Lennon, under appointments by the Court of Appeal, for Petitioner.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Paul D. Gifford, Assistant Attorney General, Morris Lenk, Assistant Attorney General, Darrell L. Lepkowsky, Allen R. Crown, Bruce M. Slavin and Helen E. Hesse, Deputy Attorneys General, for Respondent.

## OPINION

**GILBERT, P. J.**—Petitioner Eric O. Locks was charged with a criminal offense, found not guilty by reason of insanity, and committed to Atascadero State Hospital (ASH) for treatment. We conclude that while confined at ASH, he is not entitled to a hearing to determine his competence to refuse to take antipsychotic medication. We therefore deny his petition for habeas corpus.

### FACTS

In 1976, Locks was found guilty of murder and committed to a life sentence in state prison. While in Pelican Bay Prison, he was charged with battery on a prison guard. The trial court declared Locks incompetent to stand trial, suspended proceedings, and sent him to ASH for treatment. (Pen. Code, § 1368.)[1]

After six months of treatment, Locks was found competent to stand trial. (§ 1372.) On February 23, 1995, the trial court conditionally accepted his plea of not guilty by reason of insanity. (§ 1026.) It ordered Locks to undergo further psychiatric examination. The examining psychiatrist determined that Locks was suffering from a schizophrenic illness. The trial court found him not guilty by reason of insanity and committed him to ASH. (*Ibid.*)

Over his objection, Locks was treated at the hospital with psychotropic medications. After two years the treatment was discontinued to determine

---

[1]Unless otherwise specified, all statutory references are to the Penal Code.

whether he had recovered his sanity. Unfortunately, he had not recovered. The examining psychiatrist reported that Locks was a paranoid schizophrenic who required continued hospitalization. The prison psychiatrist resumed Locks's treatment with the psychotropic medications, Haldol and Olanzapine.

Locks again objected to the treatment and sought habeas corpus relief in the superior court. The trial court denied his petition. In a minute order, the court reasoned that Locks, having been adjudged not guilty by reason of insanity, had no right to refuse medication. This court summarily denied a subsequent petition.

Locks, acting in propria persona, next petitioned the California Supreme Court for review. The Supreme Court, citing Welfare and Institutions Code sections 5331, 5332; *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303 [271 Cal.Rptr. 199]; and *Keyhea v. Rushen* (1986) 178 Cal.App.3d 526 [223 Cal.Rptr. 746], granted the petition and transferred the matter to this court with an order to vacate our summary denial and to issue an order to show cause. We have done so.

## DISCUSSION

### 1.  *Exhaustion of Administrative Remedies*

■    The Attorney General asserts that Locks cannot obtain appellate relief because he failed to exhaust his administrative remedies. (*In re Serna* (1978) 76 Cal.App.3d 1010, 1017 [143 Cal.Rptr. 350]; *In re Muszalski* (1975) 52 Cal.App.3d 500, 508 [125 Cal.Rptr. 286].) The Attorney General does not enlighten us as to which administrative remedy Locks failed to pursue.

An exception to the exhaustion doctrine exists where the aggrieved party can show that the outcome of an administrative hearing is a foregone decision. (*In re Thompson* (1985) 172 Cal.App.3d 256, 262-263 [218 Cal.Rptr. 192]; *In re Fain* (1976) 65 Cal.App.3d 376, 395 [135 Cal.Rptr. 543].) In such case, administrative review is not required because it is a futile, idle, or useless act. (*In re Dexter* (1979) 25 Cal.3d 921, 925 [160 Cal.Rptr. 118, 603 P.2d 35]; *Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].)

In his return, the Attorney General states it is the policy of the state that a prior court determination of insanity is conclusive that an inmate is without competence to oppose medication. The Attorney General alludes to Locks's

long-standing mental illness and takes the position that, in the absence of a judicial determination of restoration of sanity, Locks is mentally incapable of rejecting treatment. This position has been consistently maintained by the Attorney General, both in his return filed in the superior court and his opposition to the petition before this court. This position makes ineffective and futile Locks's attempt to exhaust any administrative remedy.

### 2. *Capacity to Choose*

■ The Attorney General, citing Penal Code section 1026, subdivision (a), Welfare and Institutions Code section 4304, and *Youngberg v. Romeo* (1982) 457 U.S. 307 [102 S.Ct. 2452, 73 L.Ed.2d 28], argues that Locks has not demonstrated that the state has infringed upon a protected right. This is because the state bears the responsibility to properly care for inmates during their commitment; proper care of mental health patients often involves medication prescribed by physicians, and the state must be afforded wide latitude in prescribing such treatment. (*Kansas v. Hendricks* (1997) 521 U.S. 346 [117 S.Ct. 2072, 138 L.Ed.2d 501].)

■ Locks argues that this argument ignores the issue of consent. Our Legislature recognizes that persons with mental disorders may refuse therapy. (*Riese v. St. Mary's Hospital & Medical Center, supra*, 209 Cal.App.3d 1303.) For example, certain patients committed under the Lanterman-Petris-Short Act, Welfare and Institutions Code section 5000 et seq. (LPS), have the right to refuse antipsychotic drugs. "No person may be presumed to be incompetent because he or she has been evaluated or treated for mental disorder . . . ." (Welf. & Inst. Code, § 5331.) Similarly, Welfare and Institutions Code section 5326.5, subdivision (d), states that "[a] person confined shall not be deemed incapable of refusal [of proposed therapy] solely by virtue of being diagnosed as a mentally ill, disordered, abnormal, or mentally defective person. . . ."

*Riese* recognized the inherent unreliability of psychiatric diagnoses. " '[B]ecause of the imprecision of the criteria and difficulty inherent in any attempt to compass the human mind' [citations] determinations of mental competence simply cannot achieve scientific certainty. . . ." (*Riese v. St. Mary's Hospital & Medical Center, supra*, 209 Cal.App.3d at p. 1324.)

■ Locks argues that similarly a judicial determination of insanity under section 1026 does not equate to an adjudication of an inmate's inability to consent to medical treatment. ■ Recognizing the inherent unreliability of psychiatric diagnoses and the risk of error, *Riese* holds that "[u]nless the incompetence of a person refusing drug treatment has been

judicially established, 'it is the individual who must have the final say in respect to decisions regarding his medical treatment in order to insure that the greatest possible protection is accorded his autonomy and freedom from unwanted interference with the furtherance of his own desires.' [Citation.] The Legislature has made it eminently clear that this right does not disappear upon involuntary commitment. . . ." (*Riese v. St. Mary's Hospital & Medical Center, supra*, 209 Cal.App.3d at p. 1324.)

A finding of not guilty by reason of insanity establishes the legal status of insanity. It is an adjudication that determines that the accused was insane at the time that the crime was committed and his mental condition negated the requisite criminal intent. (§ 25, subd. (b); *People v. Skinner* (1985) 39 Cal.3d 765, 773 [217 Cal.Rptr. 685, 704 P.2d 752]; *People v. Miller* (1972) 7 Cal.3d 562, 568 [102 Cal.Rptr. 841, 498 P.2d 1089].) Locks argues it does not constitute a finding of incompetence to refuse treatment.

Mental health literature lends support to this argument. "The mere presence of psychosis, dementia, mental retardation, or some other form of mental illness or disability is insufficient in itself to constitute incompetence." (Applebaum & Gutheil, Clinical Handbook of Psychiatry and the Law (1991) 218, 220.) The authors of the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994), or DSM-IV, caution that proof of the existence of a mental illness does not necessarily portend a wholesale loss of cognitive powers. "It is precisely because impairments, abilities, and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability. [¶] . . . [¶] Even when diminished control over one's behavior is a feature of the disorder, having the diagnosis in itself does not demonstrate that a particular individual is (or was) unable to control his or her behavior at a particular time." (*Id.*, Introduction, at p. xxiii.) "Current psychiatric opinion . . . holds that mental illness often leaves the individual's intellectual understanding relatively unimpaired, but so affects his emotions or reason that he is unable to prevent himself from committing the act. [Citation.]" (*People v. Drew* (1978) 22 Cal.3d 333, 342 [149 Cal.Rptr. 275, 583 P.2d 1318].)

In *Woodland v. Angus* (D. Utah 1993) 820 F.Supp. 1497, 1502, footnote 5, the court noted: "Whether plaintiff has been found incompetent to stand trial is not dispositive of his medical competence. *See* Freedman, *Competence, Marginal and Otherwise: Concepts and Ethics*, 4 Intern. J. of L. & Psychiatry 53, 56 (1981) ('The test of competency varies from one context to another.'); Developments, *Civil Commitment of the Mentally Ill*, 87 Harv.L.Rev. 1190, 1214 (1974) ('Commentators have also noted that only some of the mentally

ill are unable to decide intelligently, whether or not to seek treatment.'). *See generally* Roth, Meisel & Ledz, *Tests of Competency to Consent to Treatment*, 134 Am.J.Psychiatry 279 (1977)."

Courts have recognized that a defendant may make rational choices despite a mental disorder. " '[E]ven though a defendant has a history of mental disorder, a medical inquiry is not required if it appears that his election to represent himself is knowing and intelligent.' [Citation.]" (*People v. Hightower* (1996) 41 Cal.App.4th 1108, 1114 [49 Cal.Rptr.2d 40].)

*Riese* recognized that "mental illness 'often strikes only limited areas of functioning, leaving other areas unimpaired, and consequently . . . many mentally ill persons retain the capacity to function in a competent manner.' (*Rivers* v. *Katz* [(1986) 67 N.Y.2d 485 [504 N.Y.S.2d 74, 495 N.E.2d 337, 342]; *Rogers* v. *Okin* [(D.Mass. 1979)] 478 F.Supp. [1342,] 1361; *Davis* v. *Hubbard* [(N.D.Ohio 1980)] 506 F.Supp. 915, 927 ['roughly 85% of the patients (of a state mental hospital) are capable of rationally deciding whether to consent to (use of psychotropic drugs).']; Brooks, *The Constitutional Right to Refuse Antipsychotic Medications* (1980) 8 Bull. of Am.Acad.Psychiatry & L.Bull. 179, 191.)" (*Riese v. St. Mary's Hospital & Medical Center, supra*, 209 Cal.App.3d at p. 1321.)

These cases, however, are not applicable here. As we shall explain, even if Locks has the capacity to refuse treatment he is not entitled to the habeas corpus relief he seeks here.

### 3. *Right to an Additional Hearing*

In a different context the right to refuse treatment is independent of the state's obligation to adequately treat the mentally ill. For example under section 2600, a prisoner is "entitled to a judicial determination of [his] competency to refuse treatment before [he] can be subjected to long-term involuntary psychotropic medication. . . ." (*Keyhea v. Rushen, supra*, 178 Cal.App.3d at p. 542.) Section 2600 gives state prisoners who refuse psychotropic medication the right to a judicial hearing.

As the Attorney General points out, the *Keyhea* injunction referenced in section 2600 tracks the distinction in the LPS between persons who are gravely disabled and those who are dangerous. Part III.F. of the injunction provides that to medicate a prisoner involuntarily on a long-term basis, the Department of Corrections must "obtain a court order which authorizes the recommended course of involuntary medication and finds that one or more of the following exist[s]: [¶] a. That the court has found, by clear and

convincing evidence that the prisoner, as a result of a mental disorder, is gravely disabled and incompetent to refuse medication; [¶] b. that the court has found, by clear and convincing evidence, that the prisoner as a result of a mental disorder is a danger to others or a danger to self."

Locks argues that he is entitled to such a determination regarding his capacity to consent to medication. But such a determination is allowed only under part III.F., subparagraph a, for those gravely disabled. Even under LPS, for patients who are dangerous, a health facility has "an affirmative obligation . . . to provide treatment for the underlying causes of the person's mental disorder," and "amenability to treatment is not required." (Welf. & Inst. Code, § 5300.)

Locks had a judicial hearing under section 1026 in which he was found not guilty by reason of insanity. Therefore he is unlike the patients in *Riese* or the prisoners in *Keyhea*. Section 1026 requires that he be confined in a mental hospital for treatment. Locks's insanity is presumed during his confinement. (*In re Franklin* (1972) 7 Cal.3d 126, 141 [101 Cal.Rptr. 553, 496 P.2d 465]; *People v. Sword* (1994) 29 Cal.App.4th 614, 624 [34 Cal.Rptr.2d 810].) By implication, section 1026.2 presumes that he is a danger to others. Moreover, the criminal act which gave rise to Locks's section 1026 hearing was a battery.

But Locks is not without a judicial remedy. At any time after 180 days of commitment, Locks or ASH may petition the court for release upon the ground that his sanity has been restored. "To be restored to sanity, defendant has the burden of proving, by a preponderance of the evidence, that he is either no longer mentally ill, or not dangerous. (§ 1026.2, subd. (k).)" (*People v. Sword, supra,* 29 Cal.App.4th at p. 624.) Under section 1026.2, subdivision (e), if the court determines that the defendant will not be a danger to the safety of others due to his mental disorder, the court shall order him placed with an appropriate forensic conditional release program for one year.

Section 1026.2 thus gives Locks the opportunity to seek a determination that he is not a danger to others. If at the section 1026.2 hearing it is determined that he is not a danger to others, then it might be appropriate at that point to determine his competency to refuse treatment. That Locks is serving a life sentence for murder, should not preclude a determination under section 1026.2. But should Locks be successful he could be returned to state prison. This may not be his ultimate goal and could prove the truth of the adage that one of life's tragedies can be getting what you wish for. But now, while Locks is being treated at a state hospital for his continuing insanity, he is not entitled to a hearing to determine his competence to refuse treatment.

Locks's petition for habeas corpus relief is denied. We vacate the order to show cause.

Yegan, J., and Coffee, J., concurred.

Petitioner's application for review by the Supreme Court was denied July 19, 2000.