Filed 8/12/14 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re SEAN ALEN GREENSHIELDS, <br><br> on Habeas Corpus. | 2d Civil No. B252222 <br> (Super. Ct. No. F198931) <br> (San Luis Obispo County) <br><br> ORDER MODIFYING OPINION <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on July 14, 2014, be modified as follows:

On page 9, add the following sentence to the end of the second full paragraph, after the sentence ending "to refuse treatment or dangerous within the meaning of section 5300":

> Because Greenshields is in the same position as an MDO or SVP, the trial court should consider whether he has committed the types of violent or threatening acts specified in section 5300 within the year prior to his most recent recommitment hearing.

There is no change in the judgment.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re SEAN ALEN GREENSHIELDS,<br><br>on Habeas Corpus. | 2d Civil No. B252222<br>(Super. Ct. No. F198931)<br>(San Luis Obispo County) |

Persons committed for mental health treatment under the Lanterman-Petris-Short Act ("LPS patients") (Welf. & Inst. Code, § 5000 et seq.) have a statutory and constitutional right to refuse antipsychotic medication under certain circumstances. So do persons committed for treatment under the Mentally Disordered Offenders Act ("MDO's") (Pen. Code, § 2960 et seq.).[1] (*In re Qawi* (2004) 32 Cal.4th 1.)

In *In re Calhoun* (2004) 121 Cal.App.4th 1315, we held that equal protection principles give persons committed for treatment under the Sexually Violent Predators Act ("SVP's") (Welf & Inst. Code, § 6600 et seq.) the same right to refuse similar treatment as MDO's.

Here we decide that persons who are found not guilty by reason of insanity ("NGI's") have the same constitutional right as MDO's and SVP's to refuse antipsychotic medication. (Welf. & Inst. Code, § 5300, hereafter "section 5300.") We disapprove our opinion in *In re Locks* (2000) 79 Cal.App.4th 890, which holds otherwise.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

Petitioner Sean Alen Greenshields was found not guilty by reason of insanity ("NGI") and committed to a state hospital. We issue an order for writ of habeas corpus. Greenshields is entitled to a hearing to determine whether he may be forcibly medicated.

PROCEDURAL BACKGROUND

Greenshields suffers from paranoid schizophrenia. In 1993, a jury found him not guilty of attempted murder by reason of insanity. (§ 1026.) The superior court committed him to a state hospital for a term of years, with a maximum commitment date of July 2, 2012.[2] In 2012, the court extended that commitment pursuant to section 1026.5.[3] In a companion direct appeal (*People v. Greenshields* (July 14, 2014, No. B243827) [nonpub. opn.]), we affirm the order extending this commitment.

Throughout his commitment, Greenshields has been treated against his will with antipsychotic medication. He is presently treated at Atascadero State Hospital (ASH) with Zyprexa, an antipsychotic, and Depakote, a mood stabilizer.

Greenshields denies that he suffers from a mental illness and believes his medications are toxic. He declares that twice before he had been forcibly injected, and saw other patients being forcibly injected. He now accepts his medications to avoid forcible injection. At the hearing on the petition to extend Greenshields's commitment, staff psychiatrist Joshua Deane confirmed that Greenshields "has been compliant with medication to this extent, . . . because . . . he knows that if he refuses medication, we will

---

[2] Section 1026, subdivision (a) provides that a defendant found to be insane at the time he committed the offense shall be "confined in a state hospital for the care and treatment of the mentally disordered or any other appropriate public or private treatment facility approved by the community program director, or . . . on outpatient status," unless the court finds the defendant's sanity is fully recovered.

[3] Section 1026.5 authorizes the court to extend the term of commitment for treatment for NGI's beyond "the longest term of imprisonment which could have been imposed for the offense" (subd. (a)(1)) if "by reason of a mental disease, defect, or disorder [the NGI defendant] represents a substantial danger of physical harm to others" (subd. (b)(1)). Trial on the petition to extend commitment is by jury unless waived by the parties. (*Id.*, subd. (b)(4).)

2

give him an injectable form of delivery."  Deane opined, "[Greenshields] cannot refuse medication; . . . [under section] 1026, [NGI's] do not have the right to refuse medication."

While the most recent petition to extend his commitment was pending, Greenshields asked the trial court to enjoin the state hospital from treating him with antipsychotic medications against his will.  The court denied his request without an evidentiary hearing.  Greenshields then filed this petition for writ of habeas corpus.  We ordered the director of ASH to show cause why a writ of habeas corpus should not issue, ordering it "to refrain from involuntarily administering antipsychotic medication to petitioner in a nonemergency situation unless:  (1) petitioner is determined by a court to be incompetent to refuse medical treatment; or (2) he is determined by a court to be a danger to others within the meaning of section 5300 of the California Welfare and Institutions Code."[4]

Respondent Department of State Hospitals ("Department") responded on behalf of ASH.  Department relies on our opinion in *In re Locks*, *supra*, 79 Cal.App.4th 890, 897, to support its contention that it may administer antipsychotic medication to Greenshields without his consent.

---

[4] Section 5300 detention requires proof of a recent overt act as follows:
"At the expiration of the 14-day period of intensive treatment, a person may be confined for further treatment pursuant to the provisions of this article for an additional period, not to exceed 180 days if one of the following exists:
"(a) The person has attempted, inflicted, or made a serious threat of substantial physical harm upon the person of another after having been taken into custody, and while in custody, for evaluation and treatment, and who, as a result of mental disorder or mental defect, presents a demonstrated danger of inflicting substantial physical harm upon others.
"(b) The person had attempted, or inflicted physical harm upon the person of another, that act having resulted in his or her being taken into custody and who presents, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm upon others.
"(c) The person had made a serious threat of substantial physical harm upon the person of another within seven days of being taken into custody, that threat having at least in part resulted in his or her being taken into custody, and the person presents, as a result of mental disorder or mental defect, a demonstrated danger of inflicting substantial physical harm upon others."

DISCUSSION

A competent adult has a constitutional and common law right to refuse even necessary medical treatment.  (Cal. Const., art. I, § 1; *In re Qawi*, *supra*, 32 Cal.4th 1, 14.)  The right to refuse medication may be limited by countervailing state interests such as caring for persons who are unable to care for themselves and "institutional security."  (*Qawi*, at p. 16.)  In California, certain classes of mentally ill people may be involuntarily committed for mental health treatment because either they are unable to care for themselves or they are dangerous.

*No Statutory Right to Refuse Antipsychotic Medication*

MDO's and LPS patients must submit to mental health treatment, but have a statutory right to refuse antipsychotic medication.  The statutes that apply to mentally ill prisoners (§ 2602, subd. (c)(5)), LPS patients (Welf. & Inst. Code, §§ 5300, 5303, 5332, subd. (b); see also *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1310), and MDO's (§ 2972) grant a right to a hearing to determine whether the person (1) is competent to refuse antipsychotic medication, or (2) has been recently dangerous, before the person may be treated with antipsychotic medication against his will.  But the statutory framework pertaining to NGI's does not include the right to such a hearing.  After a unanimous jury adjudicates a person to be NGI, the person may be committed to a state hospital regardless of amenability to treatment.  (*People v. Buttes* (1982) 134 Cal.App.3d 116, 122.)  And this treatment has included the forcible administration of antipsychotic medication.

*Equal Protection*

A defendant found to be NGI requires a finding beyond a reasonable doubt that at the time of the offense he had a mental disorder that rendered him dangerous to others.  A defendant found to be NGI is presumed to be insane during his confinement. (*In re Franklin* (1972) 7 Cal.3d 126, 141.)  We now conclude that a judgment of NGI is not a determination that the defendant is incompetent to refuse treatment or that he recently committed a dangerous act.  In the absence of such determination, equal

4

protection principles preclude treatment with antipsychotic medication in nonemergency situations.

A meritorious claim under the equal protection clause requires a showing that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) The inquiry is not whether persons are similarly situated for all purposes, but whether they are similarly situated for purposes of the law challenged. (*Ibid.*) NGI's are similarly situated to persons civilly committed who may be subject to treatment with antipsychotic medication against their will.

We concluded in *Locks* that NGI's are not entitled to a hearing to determine incompetence to refuse treatment or recent dangerousness because, unlike prisoners and LPS patients, "[b]y implication, section 1026.2 presumes that [Locks] is a danger to others," and Locks had the opportunity to seek a determination that he was no longer dangerous. (*In re Locks*, *supra*, 79 Cal.App.4th 890, 897.)[5] Subsequently, the California Supreme Court decided that MDO's have a statutory right to a hearing to determine whether they are incompetent to refuse antipsychotic medication (*In re Qawi*, *supra*, 32 Cal.4th 1, 9-10) or whether they are "recently dangerous" (*id*. at p. 21). We also decided that SVP's have the same right under equal protection principles. (*In re Calhoun*, *supra*, 121 Cal.App.4th 1315, 1350-1354.) We conclude *Locks* is no longer binding precedent and we disapprove the decision.

*Qawi* decided that MDO's, like LPS patients, have a statutory right to refuse antipsychotic medication in nonemergency situations unless a court determines the person (1) is incompetent to refuse the treatment, or (2) has been recently dangerous, because MDO's are statutorily guaranteed the "same rights" as LPS patients (§ 2972). (*In re Qawi*, *supra*, 32 Cal.4th 1, 9; *id.* at p. 24.) LPS patients have the right to a hearing on

---

[5] Section 1026.2, subdivision (e) provides, in part, "The court shall hold a hearing to determine whether the person applying for restoration of sanity would be a danger to the health and safety of others, due to mental defect, disease, or disorder, if under supervision and treatment in the community."

their competence to refuse unless they are detained pursuant to section 5300.  (Welf. & Inst. Code, § 5332; *Qawi*, at p. 19.)  *Qawi* decided that a court should "consider whether [a defendant] has committed the types of violent or threatening acts specified in section 5300 within the year prior to the commitment or recommitment" when determining whether a person is dangerous within the meaning of section 5300.  (*Qawi*, at p. 28, fn. 7.)

Qawi criticized *Locks*, because we did not consider whether Locks had committed recent acts of dangerousness pursuant to section 5300.  (*In re Qawi*, *supra*, 32 Cal.4th 1, 27.)  *Qawi* reserved for another day, however, the question whether NGI's also are entitled to a hearing upon refusal to accept antipsychotic medication.  (*Ibid.*)  Here we decide that day has arrived.

Qawi concludes that "to give MDO's the same rights as LPS patients, an MDO can be compelled to take antipsychotic medication in a nonemergency situation only if a court, at the time the MDO is committed or recommitted, or in a separate proceeding, makes one of two findings:  (1) that the MDO is incompetent or incapable of making decisions about his medical treatment; *or* (2) that the MDO is dangerous within the meaning of Welfare and Institutions Code section 5300. . . .  The rights of MDO's to refuse medication can be further limited by State Department of Mental Health regulations necessary to provide security for inpatient facilities."  (*In re Qawi*, *supra*, 32 Cal.4th 1, 9-10.)

In *Calhoun*, we held that equal protection principles require that an SVP be provided the same right as an MDO to refuse antipsychotic medication unless a court determines the person is (1) incompetent to refuse the treatment, or (2) dangerous within the meaning of section 5300.  (*In re Calhoun*, *supra*, 121 Cal.App.4th 1315, 1351-1352.)  Although SVP's have been adjudicated to be "likely [to] . . . engage in sexually violent criminal behavior," an SVP commitment does not require proof of recent dangerousness.  (Welf. & Inst. Code, § 6600, subd. (a)(1).)  We concluded that SVP's are similarly situated to MDO's because each has been adjudicated to be dangerous to others, but has

6

not necessarily been found to be recently dangerous as required by section 5300. (*Calhoun*, at pp. 1351-1352.) No proof of recently dangerous acts is required to establish either that the MDO "represents a substantial danger of physical harm to others" (§ 2972, subd. (c)),[6] or that "it is likely that [the SVP] will engage in sexually violent criminal behavior" (Welf. & Inst. Code, §§ 6600, subd. (a)(1), 6604).[7]

Like the MDO in *Qawi*, Greenshields has been adjudicated to "represent[] a substantial danger of physical harm to others." (§§ 1026.5, subd. (b)(1) [NGI's],[8] 2972, subd. (c) [MDO's].) But also like the MDO, and the SVP in *Calhoun*, Greenshields has not yet been adjudicated to be (1) incompetent to refuse antipsychotic medication, or (2)

---

[6] For MDO extended commitment, section 2972 provides,
"(a) The court shall conduct a hearing on the petition under Section 2970 for continued treatment. . . . [¶] (c) If the court or jury finds that the patient has a severe mental disorder, that the patient's severe mental disorder is not in remission or cannot be kept in remission without treatment, and that by reason of his or her severe mental disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted . . . ."

[7] For SVP commitment, Welfare and Institutions Code sections 6600 and 6604 provide:
"'Sexually violent predator' means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Welf. & Inst. Code, § 6600, subd. (a)(1).) "The court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. . . . If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of State Hospitals for appropriate treatment. . . ." (Welf. & Inst. Code, § 6604.)

[8] For NGI's, section 1026.5, subdivision (b) provides:
"(1) A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if the person has been committed under Section 1026 for a felony and by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others. [¶] . . . [¶]
"(8) If the court or jury finds that the patient is a person described in paragraph (1), the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed. This commitment shall be for an additional period of two years . . . ."

7

dangerous within the meaning of section 5300. No proof of recently dangerous acts was required to extend Greenshields's commitment. Because Greenshields is similarly situated to the defendants in *Qawi* and *Calhoun* in this respect, he is entitled to similar treatment absent a compelling state interest to the contrary.

Department argues that NGI's are not similarly situated to MDO's because they have been recognized as belonging to a "separate, distinct class." (*In re Qawi*, *supra*, 32 Cal.4th 1, 27, fn. 6, in dicta quoting Stats. 1985, ch. 1419, 2.75, p. 5018; see also *Jones v. U.S.* (1983) 463 U.S. 354, 370 [commitment beyond maximum prison term for NGI's permissible because "insanity acquittees constitute a special class that should be treated differently from other candidates for commitment"]; *People v. Tilbury* (1991) 54 Cal.3d 56, 68 [lack of a jury trial for NGI defendant on a petition for outpatient treatment does not offend equal protection principles because, unlike LPS patients, NGI's plead insanity, reducing the risk of erroneous commitment].)

But the inquiry is not whether persons are similarly situated for all purposes, it is whether they are similarly situated for purposes of the law challenged. (*Cooley v. Superior Court*, *supra*, 29 Cal.4th 228, 253; see also *People v. O'Dell* (2005) 126 Cal.App.4th 562, 571 [necessity for involuntarily medicating NGI's against their will must be based on substantial evidence that doing so would significantly further governmental interests].) NGI's, MDO's and SVP's are similarly situated for purposes of determining whether they may be treated with antipsychotic medication against their will. Administration of unwanted antipsychotic medication involves a constitutionally protected liberty interest. (*Odell*, at pp. 568-569, citing *Washington v. Harper* (1990) 494 U.S. 210, 221-222.)

Department argues that Greenshields has already been adjudicated incompetent to make medical decisions, because he has been adjudicated to be NGI and NGI's are subject to treatment regardless of amenability. But whether Greenshields may be treated with antipsychotic medication against his will is a different issue. *Qawi* rejected a similar argument concerning MDO's and "emphasize[d] that this opinion is

8

concerned with the right to refuse antipsychotic medication and not mental health treatment in general." (*In re Qawi*, *supra*, 32 Cal.4th 1, 15, fn. 4.) "Whether an individual already deprived of substantial liberty through an MDO commitment may refuse to participate in noninvasive treatments incidental to that commitment, or to opt out of a treatment program altogether, presents very different considerations from whether he or she may refuse antipsychotic medication. As explained, the coercive administration of such medication, with its potentially serious side effects, imposes a significant additional burden on the MDO's liberty interest." (*Ibid.*)

Department has not demonstrated a compelling state interest that justifies the distinction between NGI's and MDO's. (*People v. Olivas* (1976) 17 Cal.3d 236, 251 [when legislative classification affects a fundamental interest, the state must establish a compelling interest that justifies the law and that the distinctions drawn by the law are necessary to further that state interest].)

The trial court denied Greenshields's habeas petition before it heard evidence of his current dangerousness adduced at the recommitment hearing. Greenshields is entitled to a hearing in the trial court to determine whether he is incompetent to refuse treatment or dangerous within the meaning of section 5300.

Greenshields also argues that treatment with antipsychotic medication against his will violates his right to religious freedom under the First Amendment. He has not submitted sufficient evidence to support this contention and we do not consider his argument. (*Shakur v. Schriro* (9th Cir. 2008) 514 F.3d 878, 885 [only those beliefs that are both sincerely held and religious in nature are entitled to constitutional protection].)

DISPOSITION

We issue an order for writ of habeas corpus. We direct Department to refrain from administering antipsychotic medication to Greenshields against his will in a nonemergency situation unless a trial court determines he is (1) incompetent to refuse the treatment, or (2) a danger to others within the meaning of section 5300, i.e., whether he

committed the types of violent or threatening acts specified in section 5300 within the year prior to the recommitment.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

10

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Jean Matulis, under appointment by the Court of Appeal, for Petitioner Sean Alen Greenshields.

Kamala D. Harris, Attorney General, Kathleen Kenealy, Chief Assistant Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Jennifer M. Kim, Supervising Deputy Attorney General, Marie Leggon Wrighten, Deputy Attorney General, for Respondent Department of State Hospitals.