Filed 8/8/16  P. v. S.G. CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>S. G.,<br><br>    Defendant and Appellant. | 2d Crim. No. B265540<br>(Super. Ct. No. 14MH-0085)<br>(San Luis Obispo County) |

S. G. appeals an order granting the Department of State Hospitals' petition to compel him to submit to involuntary treatment with psychotropic medications.  We affirm.

### FACTS

In 1993, S. G. was found not guilty of attempted murder by reason of insanity.  Pursuant to that finding he was confined to the Department of State Hospitals (DSH).  (Pen. Code, §§ 1026, 2962.)  His commitment has been extended yearly since then.  (*Id*., § 2972.)  Since his incarceration in 1993, he has been involuntarily treated with psychotropic medications.

In 2014, S. G. asked the trial court presiding over DSH's petition to extend his commitment to enjoin DSH from treating him with psychotropic medications against his will.  The trial court denied the request without a hearing.  We granted S. G.'s petition

for habeas corpus. We held S. G. is entitled to a hearing in the trial court to determine whether he is incompetent to refuse treatment or dangerous within the meaning of Welfare and Institutions Code section 5300. (*In re Greenshields* (2014) 227 Cal.App.4th 1284.)

At the hearing Hadley Osran, M.D., senior psychiatrist at DSH, testified since September 2014 he attempted to interview S. G. monthly. But S. G. refused to be interviewed. Osran reviewed S. G.'s records going back to 1993 and spoke with other psychiatrists who treated him.

Osran said S. G. suffers from schizoaffective disorder. S. G. is paranoid and has delusions. The symptoms are demonstrated by S. G.'s belief that he is being poisoned by psychiatrists and that the medications are destroying his internal organs. His beliefs are contrary to the objective medical evidence. Since S. G. has been taking his medications, his overall psychiatric condition has improved. Without the medications, his mental health will deteriorate and he will become more psychotic, paranoid and violent.

Osran testified that there is a risk of side effects from S. G.'s medications, but S. G. does not suffer any side effects. DSH monitors for side effects by annual evaluations and quarterly or annual blood tests.

Osran said S. G. has no insight into his mental illness. S. G. refuses to acknowledge that he is mentally ill. Osran said if S. G. is not properly medicated he is a danger to DSH staff and others.

On cross-examination Osran testified he was not aware that S. G. had been taken off Zyprexa because of a rise in his liver enzymes. Osran replied that the results of blood work in March 2014 indicate S. G. is not suffering from liver damage. Osran said the benefits S. G. receives from his current medication outweigh the risk of side effects.

Todd Elwyn, M.D. is a staff psychiatrist at DSH. He treated S. G. from June through October 2014. He agreed that S. G. suffers from schizoaffective disorder. Elwyn witnessed S. G.'s delusions concerning psychiatrists and medications. S. G. believes psychiatrists are trying to kill him and chemically lobotomize him. Elwyn said

S. G. lacks the capacity to weigh the risks and benefits of medication. S. G. is a danger to others if he is not medicated. He attacked his cousin based on a delusion and has attacked two DSH psychiatrists.

### DEFENSE

Kathy Kalem and Manuel Compos are patients' rights advocates at DSH. Both witnesses testified S. G. did not appear to be under any duress when he signed a healthcare directive.

Lindsay Josvai, Ph.D., is a DSH psychologist. She testified that S. G. has not had any major incidents since 2012, and that he has been assigned level 4 status. Level 4 status means he has not exhibited any assaultive or violent behavior in the previous year.

Thomas Johnson, M.D., is a staff psychiatrist at DSH. He saw S. G. only once. He said S. G. was very knowledgeable about the side effects of the medication he was taking. Johnson saw in S. G.'s chart that he had been taken off Zyprexa due to elevated liver enzymes. Johnson had no opinion as to whether S. G. lacks the capacity to make medication decisions or is a danger to others.

### REBUTTAL

The prosecution recalled Osran in rebuttal. Osran testified that S. G.'s capacity to execute a healthcare directive did not change his opinion that S. G. lacked capacity to weigh the risks and benefits of his medication. Osran explained that although S. G. may understand his medical needs, he is delusional about psychotropic medications. S. G. is also in "psychotic denial" about having a mental disorder.

The trial court found that S. G. is incapable of weighing the risks and benefits of psychiatric medication; is incapable of knowingly and intelligently participating in decisions regarding his mental health; and is a danger to others if not properly medicated.

## DISCUSSION

### I

S. G. contends he was denied due process and a fair hearing when the trial court limited his cross-examination of Dr. Osran on rebuttal.

On rebuttal, Osran testified that S. G.'s ability to execute an advanced care directive did not change Osran's mind about S. G.'s competency to refuse psychiatric medication. On cross-examination S. G. asked about Osran's previous testimony that Osran was not aware S. G. had problems with a fatty liver caused by a prior medication. The trial court sustained the People's objection that the question was beyond the scope of the direct examination.

The scope of cross-examination is limited to matters raised on direct examination. (Evid. Code §§ 761, 773, subd. (a); *People v. Foss* (2007) 155 Cal.App.4th 113, 126.) The trial court has wide latitude to impose reasonable limits on cross-examination. (*People v . Carpenter* (1999) 21 Cal.4th 1016, 1051.)

The scope of Osran's direct examination on rebuttal was confined to S. G.'s capacity to sign an advanced healthcare directive. S. G.'s question about Osran's prior testimony wherein Osran stated he was unaware of S. G.'s problem with a prior medication was clearly beyond the scope of the direct examination. Thus the trial court properly sustained the People's objection. In any event, S. G. cross-examined Osran on the same subject matter in the People's case in chief. Any error was harmless.

### II

S. G. contends the trial court abused its discretion by failing to consider the testimony of Dr. Johnson.

But the trial court did not say it refused to consider Johnson's testimony. The court's ruling stated the court found Drs. Osran's and Elwyn's testimony to be credible. As to Johnson's testimony, the court stated, "The Court . . . does not find that the witnesses for [S. G.] offered testimony that rebutted or contradicted the testimony of Drs. Osran and Elwyn to any meaningful degree." The court was simply fulfilling its duty as the trier of fact to determine credibility and weigh the evidence.

4

Substantial evidence supports the trial court's finding.  S. G.'s inability to weigh the risks and benefits of his medication is due to his mental condition.  This in turn renders him a danger to others.

DISPOSITION

The judgment (order) is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

5

Michael Barton, Retired Judge[*]

Roger T. Piquet, Retired Judge[**]

Superior Court County of San Luis Obispo

_____

Jean Matulis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Jennifer M. Kim, Supervising Deputy Attorney General, and Carmen D. Snuggs, Deputy Attorney General, for Plaintiff and Respondent.

---

[*] Retired judge of the San Luis Obispo Sup. Ct. assigned by the Chief Justice pursuant to art. V, § 6 of the Cal. Const.

[**] Retired judge of the San Luis Obispo Sup. Ct. assigned by the Chief Justice pursuant to art. V, § 6 of the Cal. Const.