Filed 3/16/26  Cal. Dept. of State Hospitals v. F.G. CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF STATE HOSPITALS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>F.G.,<br><br>    Defendant and Appellant. | A174497<br><br><br>(Napa County Super. Ct.<br>No. 25PR000167) |

F.G. appeals from the trial court's order compelling his involuntary treatment with antipsychotic medication.  He contends that insufficient evidence supports the trial court's finding that he lacks the capacity to refuse treatment.  We affirm.

## BACKGROUND

Following a verdict of not guilty by reason of insanity, F.G. was admitted to the Department of State Hospitals-Napa (Department).  He has a history of schizophrenia and psychotic symptoms, including auditory hallucinations, persecutory delusions, paranoia, and disorganization of thoughts and behavior.  According to F.G., he transitioned at some point from the status of a person not guilty by reason of insanity (NGI) under

Penal Code section 1026, to the status of an offender with a mental disorder under Penal Code section 2960 et seq.[1]

In September 2024, a court entered an order allowing the Department to administer antipsychotic medication to F.G. without his consent. In July 2025, the Department filed a petition to renew the order. The trial court appointed counsel to represent F.G., and a few weeks later it held a hearing, which F.G. did not attend.

Dr. Domingo Laguitan, F.G.'s treating psychiatrist, testified for the Department. He recounted his medical degree, his four-year residency training program in psychiatry, his twenty years as a staff psychiatrist at the Department, his job duties (including diagnosing patients and devising treatment plans involving medications), the instances in which he had qualified as a psychiatry expert, and his treatment of thousands of patients over the course of his career. He testified that he was not currently board certified. When questioned by F.G.'s counsel, he testified that he could remember testifying in at least one other case involving an involuntary medical order. The trial court accepted Dr. Laguitan as a psychiatry expert.

Dr. Laguitan testified as follows. F.G. was assigned to his caseload in January 2025, at which point he reviewed F.G.'s records. Dr. Laguitan

---

[1] The record does not support this statement. The verified petition alleges that F.G. was admitted to the Department as an NGI patient, hearing testimony characterized F.G. as an NGI patient, the trial court's order determined that F.G. is an NGI patient, and the notice of appeal form represents that F.G. is an NGI patient. The distinction is immaterial to the appeal, however, as the relevant standards are the same for both categories. (*In re Greenshields* (2014) 227 Cal.App.4th 1284, 1293–1294 [concluding that NGI patients are entitled to same standard as mentally disordered offenders for determining whether they may be involuntarily medicated].)

generally talked to his patients at least once a month. He testified specifically about speaking to F.G. in June, July, August, and September.

F.G. has a diagnosis of schizophrenia , which Dr. Laguitan described as an umbrella term "for symptoms that render somebody as not fully in contact with reality." Dr. Laguitan testified that his observations of F.G. support the diagnosis, including observations of persecutory delusions, auditory hallucinations, and diminished functional abilities. F.G.'s symptoms are associated with violence and when they are not under control, they render him dangerous. He has not displayed aggressive behaviors "in any extensive way" while he has been taking medication.

The Department has been treating F.G. with clozapine, a very effective antipsychotic that is more likely to cause side effects than other such medications. It was recommended for F.G. in 2020 because he had not progressed in treatment and because he had previously been given two or three medications in combination, which was not a best practice.

F.G. objects to clozapine because he believes a corrupt psychiatrist who did not like him prescribed it as a form of punishment, he believes it gives him mental confusion, and it causes him to drool. Dr. Laguitan agrees that some of F.G.'s complaints are legitimate. F.G. recently has been willing to talk to Dr. Laguitan about medications and how to mitigate side effects. But Dr. Laguitan believes that F.G. would discontinue his medication if he were not subject to the involuntary medication order.

In Dr. Laguitan's opinion, F.G. is not aware of his mental illness. Although F.G. acknowledges feeling paranoid sometimes, he does not understand the feeling as a symptom of mental illness. When Dr. Laguitan told him that his auditory hallucinations are a psychotic symptom, he did not believe it. F.G. asked how that could be when he could hear the voices so

3

clearly, even though he could not see the people. F.G. does not believe that he has mental illness, and he does not believe that he needs medication over the long term, though he acknowledges some medicines have helped him think straight. F.G. does not understand the potential consequences of stopping his medication, including violence and aggression. In Dr. Laguitan's opinion, F.G. does not have the capacity to make decisions about his medical treatment.

F.G. is not currently refusing medication, he is aware that he is committed to the Department, he appears alert when Dr. Laguitan speaks with him, he recognizes Dr. Laguitan when they meet, he responds to Dr. Laguitan's questions, his speech is coherent and, for the most part, linear, and he is not aggressive toward Dr. Laguitan or other staff.

After Dr. Laguitan testified, the trial court found by clear and convincing evidence that F.G. lacks the capacity to refuse treatment. It ordered that the Department may administer antipsychotic medication to F.G. in the dosage and frequency it deems necessary for a period not to exceed a year.

## DISCUSSION

F.G. argues that insufficient evidence supports the trial court's order. We disagree.

Both an NGI patient and a mentally disordered offender have a protected liberty interest to be free from the forced administration of antipsychotic medication. (See *In re Greenshields, supra*, 227 Cal.App.4th at pp. 1290–1294 [NGI]; *In re Qawi* (2004) 32 Cal.4th 1, 14 [mentally disordered offender].) Under either categorization, a court may order such treatment only if the petitioning party presents clear and convincing evidence that the person is either (1) incompetent or incapable of making medical-treatment

4

decisions, or (2) the person is dangerous within the meaning of Welfare and Institutions Code section 5300. (See *In re Greenshields,* at p. 1294; *In re Qawi*, at pp. 9–10, 27; *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1322–1323 (*Riese*), superseded by statute on other grounds as stated in *People v. Lewis* (2025) 111 Cal.App.5th 1078, 1103–1104,[specifying clear and convincing standard for involuntary patients under Lanterman-Petris-Short Act].) In this case, only the first prong is at issue.

When determining whether an NGI patient or a mentally disordered offender is competent to consent to antipsychotic medication, the court considers whether they aware of their mental-illness condition; whether they are able to understand the benefits and the risks and the alternatives to the proposed medication, and they are able to understand and evaluate the information required for informed consent and otherwise participate rationally in the treatment decision. (*In re Qawi, supra*, 32 Cal.4th at pp. 17–18, citing *Riese, supra*, 209 Cal.App.3d at pp. 1322–1323.)

We review a trial court's order to compel involuntary treatment with antipsychotic medication for substantial evidence, taking into account the clear and convincing standard of proof. (*People v. O'Dell* (2005) 126 Cal.App.4th 562, 570; see *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996 [reviewing court must take account of standard of decision applied by trial court].) We "view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the

5

evidence, and drawn reasonable inferences from the evidence."
(*Conservatorship of O.B.,* at pp. 1011–1012.)

Here, the unrebutted testimony from Dr. Laguitan established that
F.G. has schizophrenia, yet he does not believe that he has mental illness or
that he needs medication. He believes that his audio hallucinations are real
and that his paranoia is not a symptom. He does not understand the
potential consequences of stopping his medication, including violence and
aggression. The record as a whole thus contains substantial evidence from
which a reasonable trier of fact could have found it highly probable that F.G.
does not understand his situation or the benefits of the clozapine that the
Department is administering, and that he cannot rationally participate in
discussions about his treatment. (See *Conservatorship of O.B., supra*,
9 Cal.5th at p. 1011.)

F.G.'s arguments to the contrary do not persuade us. First, F.G.
suggests that Dr. Laguitan was not credible because he was not board
certified at the time of the hearing, he remembered testifying in only one
other case involving an order to compel medication, and he did not recall
precisely when he had last testified as an expert.[2] F.G. also suggests that
Dr. Laguitan had a low level of contact with him. But it is not our role to
redetermine the credibility of an expert or reweigh the strength of his or her
conclusions. (*People v. Poe* (1999) 74 Cal.App.4th 826, 831.)

F.G. also argues that the evidence shows that he can engage rationally
in the decision-making process about his medication because Dr. Laguitan
acknowledged that F.G.'s complaints about side effects were valid, F.G. is

---

[2] At the hearing, F.G. did not object to the trial court accepting
Dr. Laguitan as an expert, and F.G. does not contend on appeal that the court
erred by doing so.

currently taking the medication he is given, and he is open-minded about changing his prescription. This argument misses the point. Neither his engagement with Dr. Laguitan about his side effects nor his reluctant compliance with his medication regime (under an order compelling the compliance) undermines or contradicts the evidence that he does not understand his mental illness or the benefits and risks of treatment. These facts thus do not undermine the evidence that he is incompetent to refuse medication.

Lastly, F.G. contends that he shows awareness of his situation as demonstrated by his acknowledgements that he feels paranoid and that some medications have helped him think more clearly. Dr. Laguitan's full testimony on these matters, however, shows that the acknowledgments do not undermine the evidence supporting the trial court's findings. F.G. acknowledges feeling paranoid, but he does not understand the feeling as a symptom of his mental illness. And he has acknowledged that some medications have helped him think more clearly, but he does not think that he needs to take them over the long term because he does not think that he is mentally ill.

## DISPOSITION

The trial court's order is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
MOORMAN, J. *

---

*Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.